CENTRAL R. CO. OF NEW JERSEY v. ANCHOR LINE, Limited.

NEW YORK CENT. & H. R. R. CO. v. SAME.

LEHIGH VALLEY R. CO. v. SAME.

(Circuit Court of Appeals, Second Circuit. December 15, 1914.)

Nos. 38–40.

1. CARRIERS ⊂═⊃23—INTERSTATE COMMERCE LAW—APPLICATION.

The interstate commerce law is not intended for the benefit of carriers but to protect passengers, shippers, and consignees against unreasonable rates of passage money and freight, and against unfair discrimination between passengers, shippers, and consignees.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 57–59; Dec. Dig. ⊂═⊃23.]

2. CARRIERS ⊂═⊃30 — INTERSTATE COMMERCE — SCHEDULES — EFFECT — DEMURRAGE.

Where interstate railroad carriers furnished lighters at tide water free to shippers to transfer freight to ocean carriers, and the shippers did not employ or control the lighters nor agree to furnish a berth, so that there was no lien on the cargo for demurrage, the railroads, by inserting a charge against the steamship companies in their published tariff for demurrage, could not make them liable therefor.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81; Dec. Dig. ⊂═⊃30.]

Appeals from the District Court of the United States for the Southern District of New York.

J. Parker Kirlin, of New York City, and Charles T. Cowenhoven, Jr., of New Brunswick, N. J., for appellants.

Burlingham, Montgomery & Beecher, of New York City (Norman B. Beecher and Ray Rood Allen, both of New York City, of counsel), for respondent.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. The libelants are common carriers of goods from points in other states to the port of New York, there to be delivered to the respondent, to be carried by it to the port of Glasgow. Through bills of lading were issued in which the inland carrier and the ocean carrier contracted, not jointly, but severally, with separate conditions as to the service of each. The libelants furnished lighters to the goods owners free. In their tariffs, however, filed with the Interstate Commerce Commission as required by section 6 of Act Feb. 4, 1887, c. 104, 24 Stat. 380, as amended by Act June 29, 1906, c. 3591, 34 Stat. 586 (Comp. St. 1913, § 8569), they provided:

"Demurrage Charges on Lighters, Barges or Car Floats.

"18. When a car float, lighter or barge reports at its destination, the shipper, consignee or steamship company must provide a berth, and two days (18 hours) from the time the car float, lighter or barge reports (Sundays and holidays excepted) shall be deemed lay days, without charge, after which demurrage shall accrue against each shipper, consignee or steamship company, as the case may be, responsible for the delay, at the following rates a day (of 24 hours) or fraction thereof:

| | |
|---|---|
| Car floats | $25.00 |
| Steam hoisting barges | 20.00 |
| Other lighters or barges | 10.00 |

"Delivery of the property, when covered by domestic bills of lading, will not be made until the demurrage charges have been paid."

When the lighters were ready to move, the respondent's agents delivered to the libelants a permit reading on the face:

"New York, ......, 19...
The Clerk of S. S.........................................., for Glasgow,
will receive from .................................................,
on or before ................................................ viz.:
...................................................................
...................................................................
Steamer at:
  "Pier ........."

And on the back:

"It is understood that any engagement of cargo is on the condition that such cargo can, in the judgment of the steamer's agents (having regard to weather and other circumstances), be put on board the steamer in proper time, before the advertised sailing date; otherwise the engagement shall not be binding upon the steam company, or its agents, in respect of any of the goods not shipped, and they shall be absolved from all consequences or claims should the steamer proceed to sea without the goods."

If the lighter did not arrive in time to deliver her cargo to the steamer, the libelants always refused to pay dead freight, while, if it were detained longer than 48 hours, respondent refused to pay demurrage. These actions were brought just before six years had elapsed from the time the alleged cause of action arose. The conduct of the parties as well as the conditions printed on the back of the permit shows that the respondent did not intend to assume any liability to the libelants for demurrage.

The libelants claim quite rightly that the tariffs, so far as required and authorized by the statute, have the force of law. The question to

be decided is whether these demurrage charges were authorized by the statute. Section 6 provides:

"* * * The schedules printed as aforesaid by any such common carrier shall plainly state the places between which property and passengers will be carried, and shall contain the classification of freight in force, and shall also state separately all terminal charges, storage charges, icing charges, and all other charges which the commission may require, all privileges or facilities granted or allowed and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates, fares, and charges, or the value of the service rendered to the passenger, shipper, or consignee. * * * No carrier, unless otherwise provided by this act, shall engage or participate in the transportation of passengers or property, as defined in this act, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this act; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs: Provided, that wherever the word 'carrier' occurs in this act it shall be held to mean 'common carrier.' "

[1] The interstate commerce law is not intended for the benefit of carriers, but to protect passengers, shippers, and consignees against unreasonable rates of passage money and of freight and against unfair discrimination between passengers, shippers, and consignees. If the shippers in this case were responsible for the demurrage, the tariff charge would apply and would have to be collected by the railroad company. But they were not.

[2] The libelants furnished the lighters free and were the only losers because of detention. The shippers did not employ or control the lighters nor agree to furnish a berth; and there being no liability on their part for these things, there is no lien for demurrage upon the cargo. The libelants, by inserting a charge against the steamship companies, could no more make them liable than they could make the shippers or consignees liable by naming them in the tariff. Indeed, as between the carriers, there is no public policy as to which of them should bear any particular charge. Such a case as Lehigh Valley R. R. Co. v. U. S., 188 Fed. 879, 110 C. C. A. 513, does not apply because in it the demurrage for the detention of cars was payable by the shipper and the company was held guilty of a misdemeanor for remitting the charge in case of one of the shippers. The foregoing makes it unnecessary to consider what, if any, delay of the lighters occurred and whether such delay was due to the fault of the respondent.

The decrees are affirmed.